IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUSTIN T. DUNCAN, ScD,<br>　　　　　　Plaintiff,<br><br>v.<br><br>ELLE LETT, PhD,<br>　　　　　　Defendant. | CIVIL ACTION<br><br><br><br>NO.  23-4284 |

# O R D E R

**AND NOW**, this 9th day of July, 2025, upon consideration of Plaintiff and Defendant's Motions for Summary Judgment (ECF Nos. 67, 69) and all responses thereto, finding additional information is needed from the parties in rendering a determination on the Motions, **IT IS ORDERED** as follows:

1. The Court has determined that Pennsylvania's Anti-SLAPP statute is not applicable in the present case.[1]

2. The Court has further concluded that New York's Anti-SLAPP statute is not applicable in the present case.[2]

---

[1] Pennsylvania passed House Bill No. 1466, also known as Pennsylvania's Anti-SLAPP statute ("Statute"), on July 3, 2024. Pa. House Bill No. 1466. Defendant argues that the Anti-SLAPP law applies to the present case, citing three cases from the Second and First Circuits. (ECF No. 67, at 16-17.) Furthermore, in support of Defendant's argument that this law (passed in July of 2024) should apply to the present case (filed in November of 2023), Defendant cites a case from the Washington State Court, Appellate Division. *Id.* None of these arguments are convincing.

　　The Bill, in Section 6, clearly states that "THIS ACT APPLIES TO A CIVIL ACTION COMMENCED OR A CAUSE OF ACTION ASSERTED IN A CIVIL ACTION ON OR AFTER THE EFFECTIVE DATE OF THIS SECTION." Pa. House Bill No. 1466 § 6. Plaintiff's Defamation *per se* claim existed in their original complaint. (ECF No. 1.) Plaintiff's Amended Complaint (ECF No. 45.) keeps this claim intact as "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Court finds that the Amended Complaint arises out of the same conduct as the initial complaint. Therefore, the Amended Complaint relates back to November of 2023 which predates the enactment of the Statute. As a result, the Statute, not being retroactive and passed after the instant action commenced, is not applicable in the present case.

[2] This is a diversity case and therefore, the Court applies the choice-of-law-rules of the forum state, Pennsylvania. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)). Conflict of laws jurisprudence in Pennsylvania has a long history. While courts within the Commonwealth traditionally followed the long-standing *lex loci contractus* or *lex loci delicti* (law of the place of contract or injury) inquiry in determining which state's laws to apply, the Pennsylvania Supreme Court abandoned

3. The Court directs that the parties inform the Court whether or not they agree that Pennsylvania defamation law should govern the present action.³ The parties shall file their response on or before **July 18, 2025**. Unless the parties agree that Pennsylvania law applies, the Court shall apply New York Law following a choice of law analysis.⁴

---

this rule in 1964. *See Griffith v. United Airlines Inc.*, 416 Pa. 1 (Pa. 1964). The traditional rule was replaced by a more flexible rule, permitting analysis of the policies and interests underlying the particular issue before the court. *Hammersmith*, 480 F.3d at 227 (citing *id.*).

The first step in determining what law to apply is to analyze whether there is an actual conflict between the potentially applicable laws. *Id.* at 230 (citing *Air Prod. & Chem. v. Eaton Metal Prod. Co.*, 272 F. Supp. 2d 482, n.9 (E.D. Pa. 2003)). A real conflict exists when two states would treat a conflict differently. *Id.* This would occur when the laws would result in a different disposition of a case. If there is no conflict, then the Court need not determine which law applies since it would not be relevant, the resolution is the same. If the Court determines there is an actual conflict, the Court must assess and categorize the conflict into one of three buckets: a true conflict, a false conflict, and the unprovided-for situation. *Id.* A true conflict exists when *both* jurisdictions' interests would be impaired by the application of the other's laws. *Id.* (citing *Cipolla v. Shaposka*, 439 Pa. 563 (Pa. 1970)). A false conflict exists when only *one* jurisdiction's interests are impaired. *Id.* at 229. (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991)). If there is a false conflict, then the Court will apply the law of the state that will be prejudiced if its laws were not applied. *Id.* at 230. If there is a true conflict, the Court will need to conduct a deeper choice of law analysis, analyzing a state's contacts under the Second Restatement of Conflicts of Laws and the interests and policies that may be validly asserted by each jurisdiction. *Id.* at 232-33. After conducting that analysis and looking at the totality of the circumstances, the Court shall decide which law should be applied.

Where "one state has a law affecting the outcome of the claim and the other state has no comparable law, a true conflict exists." *Woods Serv., Inc. v. Disability Advocates, Inc.*, 342 F.Supp.3d 592, 607 (E.D. Pa. Oct. 17, 2018) (citing *Gallagher v. Med. Research Consultants, LLP*, No. 04-236, 2004 WL 2223312, at *4–5 (E.D. Pa. Oct. 1, 2004)). In the present case, while Pennsylvania recently enacted an anti-SLAPP law, this law was not in effect nor does it apply retroactively in the present case, as discussed above. Therefore, a true conflict exists.

In determining which state "has the greater interest in the application of its law," the Court again looks to (1) an examination of contacts to determine the most significant relationship and (2) an interest-based analysis of state policies with respect to the controversy. The record indicates that the injury occurred in New York, the conduct causing the injury occurred in Pennsylvania, the Defendant is domiciled in Pennsylvania, and the Plaintiff is domiciled in New York. The relationship between the parties seems to have been conducted mostly virtually, based on the record indicating email and other electronic forms of communication, therefore, this factor does not weigh in favor of one state or the other. Because there are competing areas of connections, this step does not produce a clear answer.

However, when looking at which state's policies should apply, New York declared in its policy "that the right of **its citizens** to participate freely in the public process must be safeguarded with great diligence." *Id.* at 608 (citing *Allan & Allan Arts Ltd. V. Rosenblum*, 201 A.D.2d 136, 143–44 (N.Y. App. Div. 1994)). Because Defendant is not a New York citizen, nor claims to be, there is no reason why a defense/counterclaim available for New York citizens should be available to a Pennsylvania Defendant who engaged in alleged conduct in Pennsylvania. Thus, New York's Anti-SLAPP law does not apply. The Court notes that this is a distinct issue, separate from determining which state's defamation laws apply, therefore warranting a separate analysis. *See Woods Services, Inc. v. Disability Advocates, Inc.*, 342 F. Supp. 3d 592, 607–08 (E.D. Pa. 2018) (citing *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455 (3d Cir. 2006) (explaining that Pennsylvania rules require a choice of law analysis for each substantive issue in an action)).

³ The Parties are reminded that the Court is seeking a response on the issue of defamation only. The Court is not requesting, nor will it consider, any briefing related to the applicability of any Anti-SLAPP law. The Court, at length, has already addressed this. *See supra notes 1-2*.

⁴ Courts have consistently held that the defamation laws between New York and Pennsylvania differ because "an assertion of qualified privilege heightens the threshold negligence standard on defamation claims regarding matters of public concern under New York law, but not under Pennsylvania law." *Woods Serv., Inc. v. Disability*

2

BY THE COURT:

/s/ Hon. Kelley B. Hodge

_____
**HODGE, KELLEY B., J.**

---

*Advocates, Inc.*, 2018 WL 2134016, at *4 (E.D. Pa. May 9, 2018); *see also Press v. United Airlines, Inc.*, 2012 WL 1569786, at *7 (M.D. Pa. May 3, 2012).

    Because there is a real conflict between New York and Pennsylvania defamation laws, the second step in the choice of law analysis is to determine which state "has the greater interest in the application of its law." *Woods Services*, 2018 WL 2134016, at *5. This analysis requires (1) an examination of the contacts to determine the most significant relationship, and (2) an interest-based analysis of state policies with respect to the controversy. *Id.* (citing *Meliville v. Amer. Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978)). In evaluating the first factor, relevant contacts for the purposes of a defamation claims include (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id.* (citing *Press v. United Airlines, Inc.*, 2012 WL 1569786, at *8 (M.D. Pa. May 3, 2012)). As explained above, the contacts analysis does not weigh heavily in one way or another.

    The second factor in the choice of law analysis is clearer. The analysis favors New York defamation law because "[t]he state of a plaintiff's domicile is generally the place where most of his reputational contacts are found ... '**the state of plaintiff's domicile generally has the greatest concern in vindicating plaintiff's good name** and providing compensation for harm caused by the defamatory publication.'" *Id.*, at *5 (citing *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997)) (emphasis in original).