**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
|  | : |  |
|  | : |  |
| Dustin T. Duncan, ScD, | : |  |
|  | : |  |
| Plaintiff, | : | Case No. 23-cv-04284 (KBH) |
|  | : |  |
| vs. | : |  |
|  | : |  |
|  | : |  |
| Elle Lett, PhD., | : |  |
|  | : |  |
| Defendant. | : |  |

DEFENDANT DR. ELLE LETT'S
FOURTH MOTION FOR SUMMARY JUDGMENT

Pearlette Toussant, Esq.
The Law Office of Pearlette V. Toussant, PLLC
2917 W. Harper Street
Philadelphia, PA, 19130
pearlettetoussant@gmail.com
Phone (215) 327 2900
Fax: (267) 836 1133

Defendant Elle Lett, PhD. ("Defendant" or "Dr. Lett") respectfully moves for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. As more fully explained in the Memorandum of Law filed in Support of this Motion, the Statement of Undisputed Facts, Answers to Plaintiff's Interrogatories, Exhibits A – AF, the Declaration of Dr. Elle Lett, and the deposition testimonies of Dr. Lett, Dr. Tiffany Green, Brett Dolotina, and Krish Bhatt, the undisputed facts show that Plaintiff Dr. Dustin Duncan has failed to meet his burden under Pennsylvania and New York Law to establish the basic elements of his defamation per se claims. Summary judgment should be granted for the following independent reasons on the following matters:

1. Pennsylvania and New York's anti-SLAPP statutes apply to Plaintiff's Amended Complaint filed on October 16, 2024 thereby protecting Dr. Lett's Speech.

2. if PA's anti-SLAPP law does not apply, NY Law governs this action;

3. NY anti-SLAPP applies;

4. The public interest privilege protects Dr. Lett's speech;

5. Plaintiff is a public figure;

6. As a public figure, Plaintiff must demonstrate actual malice by clear and convincing evidence in Dr. Lett's speech-there is no such evidence;

7. Dr. Lett's private messages to colleagues are protected by the common interest privilege;

8. Dr. Lett's commentary on "X" (Twitter) are non-actionable opinions thus this claim cannot be sustained;

9. even if these statements were actionable, Plaintiff must still demonstrate actual malice-there is none;

10. Dr. Lett is owed attorney's fees.

Respectfully Submitted,

/s/ Pearlette Toussant_____
Pearlette Toussant, Esq.
The Law Office of Pearlette V. Toussant, PLLC
2917 W. Harper Street
Philadelphia, PA, 19130
pearlettetoussant@gmail.com
Phone (215) 327 2900
Fax: (267) 836 1133

*Counsel for Defendant Dr. Elle Lett, MD, PhD., MA, Mbiostat*

DATED: December 18, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| | : | |
| Dustin T. Duncan, ScD, | : | |
| | : | |
| Plaintiff, | : | Case No. 23-cv-04284 (KBH) |
| | : | |
| vs. | : | |
| | : | |
| | : | |
| Elle Lett, PhD., | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OF LAW IN SUPPORT OF
DR. ELLE LETT'S FOURTH MOTION FOR SUMMARY JUDGMENT

Pearlette Toussant, Esq.
The Law Office of Pearlette V. Toussant, PLLC
2917 W. Harper Street
Philadelphia, PA, 19130
pearlettetoussant@gmail.com
Phone (215) 327 2900
Fax: (267) 836 1133

*Counsel for Defendant Dr. Elle Lett, MD, PhD.,*
*MA, Mbiostat*

TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT………………………………………..…………1

II.  STATEMENTS OF FACT………………………………………………..………1

III.  ARGUMENT………………………………………………………………………4

  A.  Legal Standard……………………………………….…………………………4

  B.  PPA  AND  NY'S  ANTI-SLAPP  STATUTES  APPLY  TO  THIS MATTER……………………………………………………………………..……5

    i.  If the Court holds that Pennsylvania's anti-SLAPP statute does not apply to this matter, then New York law governs this action and the New York anti-SLAPP statute applies. *See* Footnote 3...…………………………………..6

  C.  DR. LETT'S SPEECH IS PROTECTED BY PUBLIC INTEREST PRIVILEGE..7

  D.  DR. DUNCAN IS A PUBLIC FIGURE …………………………………………8

  E.  DR. DUNCAN CANNOT DEMONSTRATE ACTUAL MALICE...……..………13

    i.  There Is No Actual Malice Where Dr. Lett "Reasonably Believed" Mr. Allen …………….…………………………………………………………...13

    ii.  Dr. Lett Did Not Knowingly Rely on Unreliable Sources…………….…..14

    iii.  A "Failure to Investigate" Is Not Actual Malice…………………………15

    iv.  Dr. Lett's Private Messages are Protected as Privileged…………………16

    v.  Actual Malice and Spite Are Separate and Unrelated Concepts…………17

  F.  DR.  LETT'S  JULY  &  AUGUST  TWEETS  ARE  NON-ACTIONABLE OPINIONS………...............……………………………………………………….19

  G.  NO ACTUAL MALICE IN DR. LETT'S JULY & AUGUST TWEETS ………22

  H.  ALL OF DR. LETT'S SPEECH IS PROTECTED AS PRIVILEGED………….25

  I.  DR. LETT IS ENTITLED TO ATTORNEY'S FEES…. …………………………25

IV.  CONCLUSION………………………………………………………………………25

## TABLE OF AUTHORITIES

**Pages(s)**

**Federal Cases**

*Adelson v. Harris,*
774 F.3d 803, 809 (2d Cir. 2014)…………………………………………………………5

*Anderson v. J.P. Morgan Chase Bank,*
No. 22-cv-5084, 2024 U.S. Dist. LEXIS 57413 (E.D. Pa. Mar. 29, 2024)…………………..13, 21

*Avins v. White,*
627 F.2d 637, 648 (3d Cir. 1980)………………………………………………………...11

*Azur v. Chase Bank, USA, Nat'l Ass'n,*
601 F.3d 212, 216 (3d Cir. 2010))………………………………………………………5

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC,*
151 F. Supp. 3d 287 (E.D.N.Y. 2015) ………………………………………………...22

*Biro v. Conde Nast,*
963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013)……………………………………………..8

*Bose Corp. v. Consumers Union of United States,* Inc.,
466 U.S. 485 (1984) …………………………………………………………..………21

*Bloom v. A360 Media LLC,*
466, 474 (S.D.N.Y. 2024)……………………………………………………………..15

*Bostock v. Clayton Cnty., Georgia,*
590 U.S. 644 (2020)……………………………………………………………………9

*Broughty v. Bouzy,* Civil Action No. 22-6458 (SDW) (JRA),
2023 U.S. Dist. LEXIS 136681 (D.N.J. Aug. 7, 2023)…………………………………......22

*Cibenko v. Worth Publishers, Inc.,*
510 F. Supp. 761, 766 (D.N.J. 1981)……………………………………………………...6

*Coleman v. Grand,*
523 F. Supp. 3d 244 (E.D.N.Y. 2021) ……………………………….……………………6-7, 20

*Conklin v. Laxen,*
No. 2017EF3210, 2018 BL 540135, at *7 (N.Y. Sup. Ct. July 23, 2018)…………………………12

*Crowe v. Sobieski Serv., Inc.,*
No. #17-1310, 2018 BL 278670, at *5 (E.D. Pa. Aug. 3, 2018)……………………………16

*De Ratafia v. Cty. of Columbia*, No. 1:13-CV-174 (NAM/RFT),
2013 U.S. Dist. LEXIS 138169 (N.D.N.Y. Sep. 26, 2013)………………………………..…..14

*Eugene Gu v. Verge,*
INDEX NO. 152394/2020, 2023 BL 247485 (N.Y. Sup. Ct. July 18, 2023)……………..……12

*Favata v. Seidel,*
511 F. App'x 155 (3d Cir. 2013)………………………….…………………………………….4
.
*Feist v. Paxfire, Inc.*,
No. 11 Civ. 5436 (LGS), 2017 BL 13226 (S.D.N.Y. Jan. 17, 2017)………………………….7

*Fine v. ESPN, Inc.,*
No. 5:12-CV-0836 (DEP), 2016 BL 547417 (N.D.N.Y. Mar. 25, 2016)…………..…………12

*Fitzpatrick v. Milky Way Prods*., Inc.,
537 F. Supp. 165 (E.D. Pa. 1982) …………………………….…………………………….…6

*Fogel v. Univ. of the Arts*,
No. 18-5137, 2019 U.S. Dist. LEXIS 51763m at *1 (E.D. Pa. Mar. 27, 2019)…………………6

*Franklin v. Daily Holdings, Inc.*,
135 A.D.3d 87, 21 N.Y.S.3d 6, 12-13 (N.Y. App Div. 1st Dep't 2015) …………………………22

*Franzon v. Massena Mem'l Hosp.*,
89 F. Supp. 2d 270 (N.D.N.Y. 2000) …………………………….……………………...13, 22

*Gertz v. Robert Welch, Inc*.,
 418 U.S. 323, 345, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974))……………………………………8

*Godin v. Schencks,*
629 F.3d 79, 81 (1st Cir. 2010)………………………………………………………………….5

*Goldrever v. Dow Jones & Co.*,
259 A.D.2d 353, 353 (1st Dep't 1999)…………………………………………………...12

*Gottwald. Isaly v. Garde*,
2023 N.Y. App. Div. LEXIS 2871, 2023 NY SLIP Op 02847 (1st Dept. May 30, 2023)………...5

*Gottwald v. Sebert*,
2023 N.Y. LEXIS 913, 2023 NY Slip Op 03183 (Jun. 13, 2023)…………………………………5

iv

*Hansel v. Shell Oil Corp.*, CIVIL ACTION No. 95-CV-3631,
1998 U.S. Dist. LEXIS 12595 (E.D. Pa. Aug. 7, 1998) ………………………….……………6

*Hodges v. Lutwin*,
595 F. Supp. 3d 12  (S.D.N.Y. 2022)…………………………………………………………17

*I.M. Wilson, Inc. v. Otvetstvennostyou "GRICHKO"*,
500 F. Supp. 3d 380 (E.D. Pa. 2020) …………………………………….………………….…21

*Isaly v. Garde,*
INDEX No. 160699/2018 BL 236528 (N.Y. Sup. Ct. June 27, 2023)……………………………5

*Kerrigan v. Otsuka Am. Pharm., Inc.,*
560 F. App'x 162 (3d Cir. 2014)...………………………………….…………………………19

*Konowicz v. Carr*,
838 F. App'x 1 (3d Cir. 2020) …………………………….…………………………14, 22,24-25

*Liberty Synergistics Inc. v. Microflo Ltd.*,
718 F.3d 138, 144 (2d Cir. 2013)………………………………………………………………5

*L. W. by & through Williams v. Skrmetti*,
83 F.4th 460 (6th Cir.)……………………………………………………………………….…9

*Mallory v. S & S Publrs.*,
260 F. Supp. 3d 462 (E.D. Pa. 2017)……………………….…………..……….4, 13, 15, 17-19, 21

*Manco v. St. Joseph's Univ.,*
No. 22-285, 2024 U.S. Dist. LEXIS 13181 (E.D. Pa. Jan. 25, 2024) ……………..…………19

*Marcone v. Penthouse International Magazine for Men*,
754 F.2d 1072 (3d Cir.), *cert. denied*, 474 U.S. 864 (1985)…………….……………………11

*McCafferty v. Newsweek Media Grp., Ltd.*,
955 F.3d 352, 357 (3d Cir. 2020)……………………………………………………………..19

*McDowell v. Paiewonsky*,
769 F.2d 942 (3d Cir. 1985) ……………………………………………………….……9

*Medure v. N.Y. Times Co.*,
60 F. Supp. 2d 477 (W.D. Pa. 1999). ……………………………….………...........8, 10-11, 15

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) …………………………….……………….................................19

*Miketic v. Baron*,
450 Pa. Super. 91 675 A.2d 324 (1996)……………………………………………………16

*Monge v. Univ. of Pa.*,
No. 22-2942, 2023 U.S. Dist. LEXIS 88270  (E.D. Pa. May 18, 2023)……...……...9-11, 13, 19

*Mzamane v. Winfrey*,
693 F. Supp. 2d 442 (E.D. Pa. 2010) …………………………………………………7-8

*Nationwide Tarps, Inc. v. Midwest Canvas Corp.*,
228 F. Supp. 2d 202 (N.D.N.Y. 2002) ……………………….…………………....13-14

*Nairne v. Manzo*,
Civil Action NO. 86-0206, 1987 WL 9145, at *5 (E.D. Pa. Apr. 8, 1987)………………………7

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)…………………………………………………………………13, 21

*Perez v. Hewitt*,
No. 04 Civ. 10112 (KMW) (KNF)., 2007 BL 114790, at *2(S.D.N.Y. Sept. 25, 2007)…………..4

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001) ……………………….……………………….…21

*Rosenberg v. MetLife, Inc.*,
866 N.E.2d 439, 442 (N.Y. 2007)…………………………………………………7

*Schiavone Const. Co. v. Time, Inc.*,
847 F.2d 1069 (3d Cir. 1988) ……………..……………………………..………8-9; 12

*St. Amant v. Thompson*,
390 U.S. 727 (1968).……………………………….……………………...……….14

*St. Surin v. V.I. Daily News*,
21 F.3d 1309 (3d Cir. 1994) ………………………………………….......13, 15, 17-18, 21, 24

*UPEPA Thurman v. Cowles Co.,*
541 P.3d 403, 409 (Wash. App. Div. 3 2024)…………………………………………...5

*Trent v. County of Somerset*,
No. 22-2891, 2024 BL 317986, at *2  (3d Cir. Sept. 11, 2024)…………………………..6

*Woods Servs. v. Disability Advocates, Inc.*,
342 F. Supp. 3d 592 (E.D. PA. 2018) …………………….………………………6

**State Cases**

*Veno v. Meredith*, 357 Pa. Super. 85 (1986) ……………………………………..……………………21

**Rules**

*Fed. R. Civ. P. 56(a)* …………………………………………………………….………………4- 5

42 Pa. Stat. 8320.1 ……………………………………………..……………………...4-5, 25

N.Y. Civ. Rights Law § 76-a(1)(a)(1)-(2) (McKinney). …………………………………………….6

Restatement (Second) Torts §566 Comment c (1977) ……………………………….…………….21

*Restatement (Second) of Torts*, § 593 (1977)………………………………………………16

Defendant's List of Exhibits

Exhibit A: Defendant's Statement of Undisputed Facts

Exhibit B: Dr. Duncan is a Public Figure

Exhibit C: Declaration of Dr. Elle Lett

Exhibit D: Correspondences between Dr. Duncan and Dr. Lett

Exhibit E: Defendant Dr. Lett's Responses to Plaintiff's Interrogatories

Exhibit F: Dr. Lett's Correspondences with Brett Dolotina

Exhibit G: Dr. Lett's Correspondences with Krish Bhatt

Exhibit H: Mr. Allen's Public Allegations

Exhibit I: Dr. Lett's Public Commentary on X (Formerly Known as Twitter)

Exhibit J: Dr. Duncan's Complaint Against Mr. Allen

Exhibit K: Correspondences with Plaintiff's Counsel David Lin

Exhibit L: Qualitative Study of Sexual Assault Survivors' Post-Assault Legal System Experiences

Exhibit M: The Court System and Transgender People

Exhibit N: Dr. Duncan's Complaint Against Dr. Lett

Exhibit O: Dr. Lett's Correspondence with Mr. Sawyer Allen

Exhibit P: Correspondence with Dr. Asa Radix

Exhibit Q: Correspondence with Dr. Carl Streed

Exhibit R: Dr. Lett's Correspondences with Dr. Avery Everhart and Dr. Arjee Restar

Exhibit S: Correspondence with IAPHS Dr. Tiffany Green

Exhibit T: Emails with Dr. Monica McLemore

Exhibit U: Photos of Plaintiff's Counsel's Document Production

Exhibit: V: Correspondence between Plaintiff's and Defendant's Counsel re: Judge's Request for Plaintiff to Make a Demand

Exhibit W: Dr. Duncan's Manuscript: Access to Gender Affirming care, Completion of Gender Affirming Medical Intervention, and Psychological Distress Among Transgender Women of Color: The TURNNT Cohort Study

Exhibit X: Plaintiff's Objections and Responses to Defendant's Interrogatories (Second Amended Set)

Exhibit Y: NYU Allegations and Discovery Deficiencies

Exhibit Z: Email Exchange re: Joint Settlement Report

Exhibit AA: Dr. Elle Lett's Deposition Transcript

Exhibit AB: Krish Bhatt's Deposition Transcript

Exhibit AC: Brett Dolotina's Deposition Transcript

Exhibit AD: Dr. Tiffany Green's Deposition Transcript

Exhibit AE: Dr. Lett's Bioethics Certificate Tuition Costs

Exhibit AF: Plaintiff's Amended Complaint

Exhibit AG: Resignation Letters of Plaintiff's Former Employees Brett Dolotina and Krish Bhatt

Defendant Dr. Elle Lett, through Undersigned Counsel, respectfully submits this Memorandum of Law in support of her Fourth Summary Judgment Motion ("SJM") with respect to Plaintiff Dr. Dustin Duncan's claims of defamation *per se* in the above captioned matter.

## I.     PRELIMINARY STATEMENT

In this action, Dr. Dustin Duncan ("Plaintiff" or "Dr. Duncan") accuses Dr. Elle Lett ("Defendant" or "Dr. Lett") of defamation *per se* for publicly supporting a fellow member of the Transgender community who alleged Dr. Duncan harassed him across various social media platforms. However, the law does not permit liability for defamation *per se* when Dr. Lett was, at all times, acting to support someone genuinely believed by many members of the LGBTQIA and academic public health communities (with Plaintiff's employees) to be the victim of harassment. Pennsylvania ("PA") and New York ("NY") law protect Dr. Lett's speech from liability. This SJM should be granted on ten bases: 1) Dr. Lett's speech is protected by PA's anti-SLAPP law; 2) if PA's anti-SLAPP law does not apply, NY Law governs this action and 3) NY anti-SLAPP applies; 4) the public interest privilege protects Dr. Lett's speech; 5) Plaintiff is a public figure; 6) as a public figure, Plaintiff must demonstrate actual malice by clear and convincing evidence in Dr. Lett's speech-there is no such evidence; 7) Dr. Lett's private messages to colleagues are protected by the common interest privilege; 8) Dr. Lett's commentary on "X" (Twitter) are non-actionable opinions so this claim cannot be sustained; 9) even if these statements were actionable, Plaintiff must still demonstrate actual malice-there is none; 10) Dr. Lett is owed attorney's fees.

## II.     STATEMENTS OF FACT[1]

Dr. Duncan is a "sought after global thought leader" whose "fields of…research focus…on Black gay, bisexual and other sexual minority men and transgender women of color." Ex. A, ¶4,

---

[1] Ex. A: Defendant's Statement of Undisputed Facts

1; Ex. B at Lett 492-3. Dr. Lett is a Black Transgender ("Trans") woman, University of Pennsylvania Physician and Statistician-Epidemiologist, notable LGBTQ scholar and outspoken advocate for the rights of marginalized persons, particularly the Trans community. *See* Ex. C, Lett Decl. at ¶ 3. Drs. Duncan and Lett met in Fall 2021. In December 2022, Dr. Duncan offered Dr. Lett $15,000 per year to consult on his study on Trans women of color. *See* Ex. D at DD_4-5. Dr. Lett was excited to accept the offer, but chose to prioritize clinical training and expressed interest in future work with Plaintiff. *See Id.* at Lett 119. The summer of 2023 changed that.

That summer, two of Dr. Duncan's employees contacted Dr. Lett with "dire" news that Sawyer Allen ("Allen"), a Trans man, publicly alleged (via compelling posts on social media platforms: Instagram, Facebook, and YouTube) Dr. Duncan was aggressively harassing him. *See* Ex. E at pgs 7-10, Interrogatories No. 7, 9; Ex. F at Lett 2-7; and Ex. G at Lett 14-8. These posts were liked, shared, and commented on by hundreds of people prior to reaching Dr. Lett. *See* Ex. H at Lett 44-61. Allen also created a GoFundMe seeking financial support. *Id*. at Lett 62-68. Dr. Duncan's employees feared he would retaliate if he knew that they supported Allen, so they sought Dr. Lett's allyship. *See* Ex. E, pgs. 8-10. When confronted with these alarming accusations, Dr. Lett, for the sake of professional and financial gain, could have done the much easier thing: remain silent. Instead, Dr. Lett mustered courage to stand against a well-known colleague by publicly supporting Allen. On June 30, 2023, Dr. Lett shared Allen's GoFundMe on X stating:

> STATEMENT 1: "Found out a ***trusted colleague who studies trans people*** has done horrible things and victimized ***a vulnerable trans person***[,] and ***I'm really struggling on what Justice and courage looks like here. Like amplifying would put me at risk but not feels dirty.*** I know it to be true…." *See Ex.* N, Lett Complaint at ¶ 17; Ex. I. at DD_318. (emphasis added).

> STATEMENT 2: "I'm rarely **pulled to post** for mutual aid people I am not directly linked to. I am **two trans people removed** from this person. I will not share details for other reasons but if you believe in mutual aid and want to **support someone**

**who has been harmed by the power assembled** in **_our wheelhouse of academic privilege_**, please donate to this gofundme by Sawyer.…" See *Id.* at ¶ 21.

STATEMENT 3: "There are **public details and evidence** out there if you want to investigate, but **_I'm more interested in supporting Sawyer_** so I decided not to link those." *See Id.* at ¶ 23; Ex. I. at DD_318. (emphasis added).

STATEMENT 4: "I'd really like to see this goal reached today. I gave 100. Can you match?" *Id.* at Lett 71.

Notably, that same day, Dr. Lett invited Dr. Duncan via email to a conversation in "transparency" and "honesty" about Allen's allegations underscoring the fact that Dr. Lett's statements were made in full confidence that Allen's allegations were true. Ex. D at DD_25. Hence, no actual malice. Dr. Duncan never responded. Instead, on July 14, 2023, Dr. Duncan's Attorney, David Lin, sent Dr. Lett a lawsuit that Dr. Duncan filed against Allen. *See* Ex. K at pgs. 4 -5. Dr. Lett informed Counsel Lin that his email read like a threat and that her belief in the truth of Allen's claims were undergirded by allegations that Dr. Duncan engaged in similar behavior at New York University (NYU). Here, Plaintiff's Counsel learned Dr. Lett had reason to believe Allen's allegations. *See Id.* at pg. 2; *see also* Ex. Q at Lett 592; and Ex. Y at 2, 8. Thus, due to the urgency with which Dr. Duncan's employees contacted Dr. Lett for help; the convincing nature of Allen's public allegations; rumors of allegations that Dr. Duncan left a position at NYU due to similar behavior; the reality that victims often are not believed (*See* Ex. L at Lett 601, 611-612, and 614); Dr. Lett's awareness of how court systems are often used to harm Trans Community members; Dr. Lett's background as an advocate for the Trans Community; and Dr. Lett's history as a survivor of assault, Dr. Lett continued to believe and support Allen in the face of Dr. Duncan's lawsuit against him. *See* Ex. C at ¶33; *see also* Ex. M at Lett 448-491. Still, Dr. Lett deleted the tweets. Afterwards, Trans and public health community members questioned whether Dr. Lett's support for Allen waned. *See* Ex. G at Lett 32. So Dr. Lett chose to maintain public support for Allen, even with

questions regarding the "veracity of [the] claims". *See* Ex. I. Plaintiff and his Counsel already acknowledged Dr. Lett's comments "public[ly] support[ing]" Allen stemmed from genuine belief that Allen experienced harm, yet they now improperly claims defamation *per se* in the statements. *See* Ex. A at ¶27. Thankfully, the law protects Dr. Lett's public participation; to conclude otherwise would be to chill much-needed free speech that aims to support a vulnerable community.

## III.    ARGUMENT

### A.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a).* The court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Mallory v. S & S Publrs.*, 260 F. Supp. 3d 453, 457 (E.D. Pa. 2017) (citing *Favata v. Seidel*, 511 F. App'x 155, 158 (3d Cir. 2013); *Perez v. Hewitt*, No. 04 Civ. 10112 (KMW) (KNF)., 2007 BL 114790, at *2(S.D.N.Y. Sept. 25, 2007). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *Id*. For a fact to be considered "material," it "must have the potential to alter the outcome of the case." *Id*. Once the movant "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Id.* at 457-8. There is no genuine dispute as to any material facts that: (1) Dr. Lett's speech is protected public expression under *42 Pa. Stat. 8320.12;* (2) Dr. Duncan, as a public figure, cannot present clear and convincing evidence of actual malice in Dr. Lett's commentary required to sustain a defamation *per se* claim; (3) Dr. Lett's July and August commentary are nonactionable opinions

lacking any actual malice; (4) Dr. Lett's private messages are protected by the common interest privilege and (5) Dr. Lett's statements are protected by the public concern privilege. Thus, summary judgment in favor of Dr. Lett must be granted.

**B.    PA AND NY'S ANTI-SLAPP STATUTES APPLIES TO THIS MATTER**

Pennsylvania's anti-SLAPP statute[2] passed on July 17, 2024 recognizes "a disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression" and "grants immunity to those groups or parties exercising the rights to protected public expression." *42 Pa. Stat. 8320.12*. PA's anti-SLAPP statute applies to Plaintiff's Amended Complaint filed on October 16, 2024. *See 8340.18. Section 6*; *see also UPEPA Thurman v. Cowles Co.*, 541 P.3d 403, 409 (Wash. App. Div. 3 2024) (holding that "the UPEPA applies to a [plaintiff's] original and amended defamation claims" filed after the passage of the act).[3]

PA's anti-SLAPP statute grants immunity for protected public expression where a party (1) fails to "establish a prima facie case as to each essential element" of its claim; (2) fails to "state a cause of action upon which relief can be granted," or (3) "there is no genuine issue as to any material fact, and the person against whom the cause of action … has been asserted is entitled to judgment as a matter of law." *42 Pa. Stat. 8340.15*. First, Dr. Lett's speech meets the definition of "protected public expression" as demonstrated infra. *Id.* Second, as demonstrated below, Dr. Duncan "fails to 'establish a prima facie case as to each essential element'" of his defamation per

---

[2] Federal Courts recognize the validity of state anti-SLAPP statutes. *See Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (finding application of Nevada's anti-SLAPP provisions in federal court "unproblematic"); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 144 (2d Cir. 2013) (applying California's anti-SLAPP law in federal court).

[3] *See also 8340.18. Section 5* ("[C]onsideration must be given to the need to promote uniformity of law with respect to its subject matter among states that enact it." The Second Circuit, applies anti-SLAPP law to actions "pending at the time of the statute's enactment." *Isaly v. Garde*, INDEX No. 160699/2018 BL 236528 (N.Y. Sup. Ct. June 27, 2023) (citing *Gottwald. Isaly v. Garde*, 2023 N.Y. App. Div. LEXIS 2871, 2023 NY Slip Op 02847 (1st Dept. May 30, 2023); *Gottwald v. Sebert*, 2023 N.Y. LEXIS 913, 2023 NY Slip Op 03183. The Third Circuit should do the same.

se claim where he is (1) a public figure, (2) Dr. Lett's speech was made without actual malice, (3) some of Dr. Lett's allegedly defamatory remarks are opinion statements and can thereby not be labeled as defamatory, and (4) attempts to use Dr. Lett's private messages to establish a claim for defamation per se, amplification, or even actual malice all fail where each of these messages are protected under the common interest privilege. *Id.* Finally, as argued infra, the weight of evidence proves "there is no genuine issue as to any material fact." *Id.* Thus, PA's anti-SLAPP law applies.[4]

"[P]rotected public expression" includes "communication[s] on a matter of public concern." *Id.* at 8340.13-14. "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Trent v. County of Somerset*, No. 22-2891, 2024 BL 317986, at *2 (3d Cir. Sept. 11, 2024). Allen's public allegations were the "subject of legitimate new interest" where Allen's allegations implicate questions of LGBTQ rights and the National "Me Too" movement. *See Fogel v. Univ. of the Arts*, No. 18-5137, 2019 U.S. Dist. LEXIS 51763m at *1 (E.D. Pa. Mar. 27, 2019) (Recognizing the "reach[]" of the "Me Too" movement into a University's decision to discipline Professors accused of misconduct.). Given Allen's Trans identity and Dr. Duncan's

---

[4] If the Court holds that the PA anti-SLAPP statute does not apply, NY law and NY anti-SLAPP apply since (1) a conflict exists between the two laws (*See Woods Servs. v. Disability Advocates, Inc.*, 342 F. Supp. 3d 592, 607-8 (E.D. Pa. 2018)) and (2) New York has the most significant relationship to the conflict (Id. at 608). *See also Hansel v. Shell Oil Corp*., CIVIL ACTION No. 95-CV-3631, 1998 U.S. Dist. LEXIS 12595, at *1 (E.D. Pa. Aug. 7, 1998); *Fitzpatrick v. Milky Way Prods*., Inc., 537 F. Supp. 165, 171 (E.D. Pa. 1982); Restatement §150, and *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 766 (D.N.J. 1981). New York's anti-SLAPP protects "any communication…in a public forum in connection with an issue of public interest." §76-a(1)(a)(1)-(2); *See also Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021); §76-a(1)(d). Further, "an assertion of qualified privilege heightens the threshold negligence standard on defamation claims regarding matters of public concern under [NY] law, but not …[PA] law." *Woods Servs., Inc. v. Disability Advocates*, Inc., No. 18-296, 2018 BL 164018, at *4 (E.D. Pa. May 8, 2018).

status as a well-known Academic of matters impacting the LGBTQ community, Allen's public allegations were "a matter of political, social, or other concern to the community." *Id*. Comparable to "Me Too", the nature of Allen's public allegations centered around alleged harassment by a Prominent Public Health Educator with a greater position of power in the community than him thereby making these public allegations even more a matter of public controversy. *See Coleman*, 523 F. Supp. 3d at 259 (Allegations of harassment by an individual of authority in an industry or community were a matter of public concern.); *see also Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 500 (E.D. Pa. 2010) (Finding notoriety in an educator's misconduct.). Additionally, the fact that Allen's allegations were publicized across social media and received numerous comments, shares, and public participation prior to Dr. Lett's involvement (*see* Ex. H*.)* and Dr. Duncan's public lawsuit in response further embroiled the matter as one of public controversy. *See Boyer v. Pitt Publishing Co., 1936*, 324 Pa. 154, 188 A. 203. PA's anti-SLAPP applies.

## C.      **DR. LETT'S SPEECH IS PROTECTED BY PUBLIC INTEREST PRIVILEGE**

PA and NY Courts recognize a conditional privilege that "protect[s] otherwise defamatory statements" when "a recognized interest of the public is involved." *Nairne v. Manzo*, Civil Action NO. 86-0206, 1987 WL 9145, at *5 (E.D. Pa. Apr. 8, 1987); *Id.* (stating "conduct which otherwise would be actionable is to escape liability [where] the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to plaintiff's reputation."); *Feist v. Paxfire, Inc*., No. 11 Civ. 5436 (LGS), 2017 BL 13226, at *7 (S.D.N.Y. Jan. 17, 2017) (""[p]ublic policy mandates that certain communications, although defamatory, cannot serve as the basis for…liability in a defamation action" and, in turn, a qualified privilege may be appropriate for statements that "foster[]" a "public interest."). "Communications…protected by a qualified privilege are not actionable unless a plaintiff can demonstrate…malice….interpreted to mean…a knowing or reckless disregard of a statement's

falsity." *Rosenberg v. MetLife, Inc*., 866 N.E.2d 439, 442 (N.Y. 2007). As argued infra, Dr. Lett's

speech was a matter of public interest and there is no malice. Thus, Dr. Lett's speech is protected

by the public interest privilege. Here, this SJM should be granted.

**D.**     **DR. DUNCAN IS A PUBLIC FIGURE**

"Whether…a person…is a public figure is a question of law for the court to decide." *Biro*

*v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013); *Medure v. N.Y. Times Co.*, 60 F. Supp.

2d 477, 484 (W.D. Pa. 1999). There are three types of public figures for  defamation law purposes:

"all-purpose public figures…who are widely recognized, []limited purpose public figures, who

may not be well known on every issue but who are sufficiently involved in a particular area to be

considered as public figures for that purpose." *Schiavone Const. Co. v. Time, Inc*., 847 F.2d 1069,

1077 (3d Cir. 1988); *see* also *Gertz v. Robert Welch, Inc*. 418 U.S. 323, 345, 41 L. Ed. 2d 789, 94

S. Ct. 2997 (1974)), and "involuntary public figures." *Mzamane*, 693 F. Supp. 2d at 498. "Those

who have voluntarily sought and attained influence or prominence in matters of social concern are

generally considered public figures." *Brimelow v. N.Y. Times Co*., No. 21-66-cv, 2021 BL 404388,

at *2 (2d Cir. Oct. 21, 2021). Plaintiff's public biographies state he's a "widely recognized" public

figure (*Id.)* as "a sought-after global thought leader[,] innovative researcher" and "award winning

leader" whose "research has appeared in major media outlets including U.S. News & World

Report, The Washington Post, The New York Times and CNN" as well as "leading public health,

epidemiology, medical, geography, criminology, demography, and psychology journals." (Ex. A at

¶4-5). Dr. Duncan has also "collaborat[ed] with scholars across the world" to produce "over 200

high-impact articles [], book chapters and [has] books cited over 9,200 times." *Id.* at ¶5; Ex. B at

Lett 493–4. He "has been funded by the National Institutes of Health, the Centers for Disease

Control and Prevention, the HIV Prevention Trials Network, the Robert Wood Johnson

Foundation, the Verizon Foundation, and the Aetna Foundation" (*Id.*; Ex. B at Lett 493–4) and has numerous mentoring and leadership awards from a wide array of notable sources. *Id.*; Ex. B at Lett 493–4. Dr. Duncan even founded his own foundation. *See Id.* Ex. B at Lett 494. Here, Dr. Duncan's own characterization of himself as a widely recognized in addition to his "power" and "influence," make him a public figure. *Schiavone Const. Co.*, 847 F.2d at 1077.

The Third Circuit analyzes two-prongs to determine a party's status as a limited purpose public figure ("LPPF"): "(1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of the plaintiff's involvement in that controversy." *Monge v. Univ. of Pa.*, No. 22-2942, 2023 U.S. Dist. LEXIS 88270, at *43 (E.D. Pa. May 18, 2023) (citing *McDowell v. Paiewonsky*, 769 F.2d 942, 949 (3d Cir. 1985)). A public controversy is "a real dispute, the outcome of which affects the general public or some segment of it," and the plaintiff's involvement in the controversy must be voluntary. *Id.*(citing 769 F.2d at 948-49). Further, "[w]hen an individual undertakes a course of conduct that invites attention [and general public discussion], even though such attention is neither sought nor desired, he may be deemed a public figure." *Id.* First, the alleged defamation in this action involves a public controversy where the heart of the speech discusses Dr. Duncan's alleged treatment of a Trans person. The treatment of Trans people is a real dispute receiving national attention with an outcome that "affects the general public" as a matter of human rights and a specific "segment" of the general public, LGBTQ persons. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020) (holding an employer violates Title VII, which makes it unlawful to discriminate against an individual "because of" the individual's sex, by firing an individual for being homosexual or being a transgender person."); *see also L. W. by & through Williams v. Skrmetti*, 83 F.4th 460 (6th Cir.). Further, Dr. Tiffany Green testified that "there's a very well documented problem with sexual harassment in…[the] collective public health

field" and Allen's allegations were a concern for the IAPHS conference in particular because Trans Scholars were expected to attend the conference." Ex. A at ¶¶11-2. When news of Allen's public allegations reached Dr. Lett, it had become a matter of public controversy receiving attention from Public Health Academics and people concerned with human rights concerning Trans people, including many social media users seeking to involve Columbia University ("Columbia") and local authorities. Ex. A at ¶¶ 20-22; 24; 30-31. Moreover, the reason Dr. Duncan's employees brought Allen's allegations to Dr. Lett's attention was because Dr. Duncan studies Trans people and Dr. Lett's standing as a researcher and advocate for Trans rights. Ex. C at ¶3. Here, Dr. Lett's "allegedly defamatory statements were made regarding a matter of public controversy, with 'foreseeable and substantial ramifications for non-participants,'" particularly members of the LGBTQ community, upon which Dr. Duncan relies for his research. *Medure*, 60 F. Supp. 2d at 485. Thus, Dr. Duncan's "past [and present] business activities ….were germane to the controversy" and being commented on by Dr. Lett. *Id.* Further, Dr. Duncan is an LPPF where "the loss of some []potential contracts [and other research or scholarly opportunities] form the basis of [Dr. Duncan's] demand for damages in this action." *Id.*; *See also* Ex. A at ¶¶ 35, 33; Ex. N at ¶ 45.

On prong two, Dr. Duncan has undertaken "a course of conduct that invites attention" in many ways. *Monge*, No. 22-2942, 2023 U.S. Dist. LEXIS 88270, at *43. His "fields of respected research focus predominantly on intersectional and health equity-based research focusing on Black gay, bisexual and other sexual minority men and transgender women of color using a social and spatial epidemiologic lens." Ex. A at ¶1; Ex. B at Lett 493-4. In fact, the notoriety of his research "on the health and equities experienced by LBGTQIA populations" led Dr. Green to nominate Dr. Duncan co-chair for the IAPHS Conference "relat[ing] to gender and sexuality" and meant to "center[] the perspectives of marginalized scholars." *See* Ex. A ¶8. In Public Health Academia,

Dr. Duncan's research makes him well known. *See Id*. ¶9. Thus, the nature of Dr. Duncan's "research interests, numerous publications, and publication of courses" on an "online platform" place him at the center of this controversy and make him a LPPF. *See Monge v. Univ. of Pa*., No. 22-2942, 2023 BL 205028, 2023 WL 4032661 (E.D. Pa. June 13, 2023) (A Professor "became a limited public figure…when she published her course" with subject matter related to the controversy on an "online platform."). Dr. Duncan admits as much in his complaint wherein he alleges that Dr. Lett's public statements allegedly "harm[ed his] ability to research and work within the transgender community" Ex. A at. ¶33. Plaintiff's complaint also states "a significant area of focus for [his] research and professional work is the LGBTQ community." Ex. A a*t* ¶30. Here, Dr. Duncan's own research further "inject[s] him into a public debate and are attempts to influence the outcome" of how he is seen amid the controversy thereby making Dr. Duncan a LPPF. *Medure*, 60 F. Supp. 2d at 485. Dr. Duncan is also a LLPF due to his numerous news appearances, awards, research focus as a Public Health Scholar, and role as Conference Co-chair of the Interdisciplinary Association for Population Health Science (IAPHS). *Schiavone Constr. Co.*, 847 F.2d at 1078. ("Plaintiffs who had appeared frequently in the news could not escape limited public figure status."). Further, Courts have determined Professors and other Academics to be LPPFs where the allegedly defamatory statements implicated their professional activities. *See Monge v. Univ. of Pa.*, No. 22-2942, 2023 U.S. Dist. LEXIS 104417, at *5-6 (E.D. Pa. June 13, 2023); *see also Avins v. White*, 627 F.2d 637, 648 (3d Cir. 1980). Thus, where Allen's public allegations specifically tagged "Columbia" and "lgbtq help", Dr. Duncan is a LPPF due to his "position" and engagement "in a profession which draws him regularly into regional and national view and leads to 'fame and notoriety in the community.'" *Marcone v. Penthouse Int'l Magazine for Men,* 754 F.2d 1072, 1083 (3d Cir. 1985).

Under NY law, Plaintiff is an LPPF where he 1) invited public attention to influence others in public health academia, 2) voluntarily injected himself into the public controversy of the treatment of Trans and LGBTQ issues, 3) assumed a position of prominence regarding LGBTQ (specifically Trans issues), through his status as a "widely-recognized" and "sought after global thought leader", Columbia Professor, and IAPHS conference co-chair and he 4) maintained regular and continuing access to the media through his regular use of social media in addition to his numerous public appearances on U.S. News & World Report, The Washington Post, The New York Times and CNN" as well as many "leading public health, epidemiology… psychology [and other] journals." Biro, 963 F. Supp. 2d at 270 (Finding Plaintiff to be a LPPF where he 1) successfully invited public attention by being in his "own admission…a leading authority" in his field who lectured at various Universities and was widely published; 2) voluntarily injected himself into a public controversy; 3) assumed a prominent position in the controversy by being "well-known" and 4) had regular and continuing access to the media through news interviews); see also *Fine v. ESPN, Inc.,* No. 5:12-CV-0836 (DEP), 2016 BL 547417, at *6 (N.D.N.Y. Mar. 25, 2016)*; see also Eugene Gu v. Verge*, INDEX NO. 152394/2020, 2023 BL 247485, at *14 (N.Y. Sup. Ct. July 18, 2023) (Holding Plaintiff was a LPPF where he "plainly 'thrust [him]self into the public spotlight and sought a continuing public interest in [his] activities,' by writing; appearing on camera; granting press interviews; and tweeting extensively about his social activism"); *Conklin v. Laxen*, No. 2017EF3210, 2018 BL 540135, at *7 (N.Y. Sup. Ct. July 23, 2018); *Goldrever v. Dow Jones & Co.*, 259 A.D.2d 353, 353 (1st Dep't 1999) (an art restorer known within his profession but not outside of it was considered an involuntary limited purpose figure). Though Dr. Duncan claims to be a private citizen, he "can[not] escape public figure status simply because he wishe[s] not to be one." *Schiavone Const. Co*., 847 F.2d at 1078.

12

E.    **DR. DUNCAN CANNOT DEMONSTRATE ACTUAL MALICE**

Pennsylvania and New York law require public figures to prove "actual malice by clear and convincing evidence" to sustain a claim for defamation. *St. Surin v. V.I. Daily News*, 21 F.3d 1309, 1318 (3d Cir. 1994); *Mallory*, 260 F. Supp. 3d at 465 (A LPPF plaintiff "must show by clear and convincing evidence that the defendant acted with actual malice in publishing statements about her.")(citing *Marcone*, 754 F.2d at 1087); *Franzon v. Massena Mem'l Hosp.*, 89 F. Supp. 2d 270, 280 (N.D.N.Y. 2000). "Actual malice is a question of law." *Mallory*, 260 F. Supp. 3d at 459. "The burden of demonstrating malice rests on the…plaintiff." *Nationwide Tarps, Inc. v. Midwest Canvas Corp.*, 228 F. Supp. 2d 202, 213 (N.D.N.Y. 2002). Actual malice is "knowledge that [the statement] was false or [was made] with reckless disregard of whether [the statement] was false or not." *Monge v. Univ. of Pa.*, No. 22-2942, 2023 U.S. Dist. LEXIS 104417, at *20 (E.D. Pa. June 13, 2023) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)); *St. Surin*, 21 F.3d at 1317; 89 F. Supp. 2d 280 (N.D.N.Y. 2000). The "exacting standard for malice is met when the… publisher 'in fact entertained serious doubts as to the truth of his publication'" *Id.* The evidence shows Dr. Lett never entertained any doubt as to the truth of her statements prior to publication and did not believe she had reason to do so until she was sued.

i.    ***There Is No Actual Malice Where Dr. Lett "Reasonably Believed" Allen***

There can be no actual malice where Dr. Lett was "reasonably justified in believing" Allen's public allegations to be true. *Anderson v. J.P. Morgan Chase Bank*, No. 22-cv-5084, 2024 U.S. Dist. LEXIS 57413, at *16 (E.D. Pa. Mar. 29, 2024) ("Plaintiff's defamation claim fails because, even from Plaintiff's version of the facts, the Court cannot conclude that Defendant wasn't reasonably justified in believing that the statement was true."); *Franzon*, 89 F. Supp. 2d at 280-81 (N.D.N.Y. 2000) (Granting Defendant's summary judgment where "the evidence suggest[ed] that

[Defendant] could have reasonably believed his comments to be true."). Many people, including Dr. Duncan's own employees who brought this public controversy to Dr. Lett's attention and many of his colleagues, believed Allen's public accusations against him. Thus, it is reasonable, according to Dr. Lett's subjective understanding, that Allen had indeed been a victim of harm. *See* Ex. A 45-46, Ex. C at ¶¶ 13, 48-49; Ex. K at pg. 2. Dr. Lett's correspondence with Allen also underscores Dr. Lett's belief that Allen was a victim of harm. *See* Ex. O at Lett 123 - 126 (Dr. Lett says to Allen, "I'll not contact you again unless you reach out to avoid retraumatizing. Hope your strength returns soon."). Dr. Lett's June 2023 email to Dr. Duncan further proves that Dr. Lett genuinely believed Allen to be a victim of harm. Ex. D at DD_25 (stating "I am publicly supporting Sawyers GoFundMe based on the harms you have done to him."). Although, Plaintiff's complaint attempts to cite this email as evidence of Defendant's reckless disregard for the truth (*See* Ex. N at ¶25), this email actually points the exact opposite: Dr. Lett "subjective[ly]" believed Allen's public allegations to be true. *Konowicz v. Carr*, 838 F. App'x 1, 4 (3d Cir. 2020) (Courts "look to the speaker's subjective understanding of the truth or falsity of a statement when considering actual malice.") (citing *St. Amant*, 390 U.S. at 731). This email also highlights that Dr. Lett's alleged knowledge was based on the testimony of people and materials who Dr. Lett believed to be credible sources. *See De Ratafia v. Cty. of Columbia*, 2013 U.S. Dist. LEXIS 138169, at *1 (N.D.N.Y. Sep. 26, 2013) ("If the information is given in good faith by an individual who believes the information to be true, he is protected against the imposition of liability in a defamation action."); *Nationwide Tarps, Inc.,* 228 F. Supp. 2d at 213 (Same). In fact, Plaintiff acknowledged that Dr. Lett's speech "public[ly] support[ing]" Allen came from a place of genuine belief that Allen was harmed. *See* Ex. A ¶ 27; Ex. J at ¶34 (Plaintiff states "one of Professor Duncan's … colleagues has expressed support for...Sawyer without knowing that the allegations against Professor Duncan are false.").

14

### ii.    Dr. Lett Did Not Knowingly Rely on Unreliable Sources

There can be no actual malice where there is "no record evidence that [Dr. Lett] relied on sources [known to be] unreliable." *Medure*, 60 F. Supp. 2d at 488. Dr. Lett's belief in the truthfulness of Allen's accusations were rooted in a reliance on the trustworthiness of the convictions of Dr. Duncan's employees who desperately reached out for help (*see* Ex. C at ¶ 13; *see also* Ex. F at Lett 2, Ex. G at Lett 14-32, and Ex. K at pg. 2) as well as Allen's compelling posts. *See* Ex. H at Lett 44 -68. Here, not only is "the explanation given by the defendant[] a plausible one… there is [also] no evidence that [Dr. Lett] deliberately published a falsehood or w[as] indifferent to whether or not what [was] published was true." *Id.* at 491.

### iii.    A "Failure to Investigate" Is Not Actual Malice

Although Plaintiff's complaint alleges Dr. Lett did not do enough to investigate Allen's allegations, "it is well-established that…a failure to investigate in and of itself is insufficient to show actual malice." *Bloom v. A360 Media LLC*, 735 F. Supp. 3d 466, 474 (S.D.N.Y. 2024) (quoting 491 U.S. 657, 688(1989)); *Mallory*, 260 F. Supp. 3d at 462; St. *Surin*, 21 F.3d at 1317 ("[N]either negligence nor failure to investigate…[are] sufficient to establish either a knowledge of the falsity of, or a reckless disregard of, the truth or falsity of the materials used."). Further, Dr. Lett did attempt to investigate the allegations: Dr. Lett's understanding that Allen's allegations had merit were rooted in the accounts of Dr. Duncan's employees who had a working relationship with Dr. Duncan, believed the allegations, and whose fear gave Dr. Lett reason to believe that Dr. Duncan was capable of the allegations. Dr. Lett also spoke with colleagues and learned that Dr. Duncan allegedly left NYU because of similar allegations. *See* Ex. Q at Lett 592. Dr. Lett also contacted Dr. Duncan on the date of the initial tweets at issue to give Dr. Duncan the opportunity to respond to her decision to publicly support Allen. *See* Ex. D at DD_25. Plaintiff never

responded. To reiterate, had Dr. Lett not reached out to Dr. Duncan, this still would not constitute

evidence of actual malice. *Bloom*, 735 F. Supp. 3d at 474; *Mallory*, 260 F. Supp. 3d at 464.

### iv.    Dr. Lett's Private Messages are Protected as Privileged

Plaintiff's claim that Dr. Lett had "antipathy" towards Dr. Duncan thereby leading her to

amplify Allen's allegations is a tale of mythological proportions that in no way aligns with the

weight of the evidence, from Dr. Lett's messages to colleagues (Exs. P, Q, R, S, and T), declaration

(Ex. C), and deposition testimony (Ex. AA). The record undoubtedly contains seemingly harsh

statements[5] from Dr. Lett in private conversations about Plaintiff; however, these private messages

are (1) privileged and (2) Plaintiff quotes them completely out of context. The legal standard for

the common interest privilege  follows:

> Defendants who make defamatory statements are not liable for them if those
> statements are 'published upon an occasion that [is] conditionally
> privileged.' *See Restatement (Second) of Torts*, § 593 (1977). One such occasion
> of a conditional privilege occurs when the parties share a common interest. *See id.* §
> 596. …common interest privilege applies when the speaker and the recipient share
> a common interest in the subject matter and both are entitled to know about the
> information…common interest privilege extends to communications made between
> persons who have a common interest for the protection of which the allegedly
> defamatory statements are made.…persons associated together in **professional
> activities** are likewise within the rule…. the common interest privilege applies in
> those situations where there is a close relationship, such as between members of a
> family, a work or business relationship, …or common members of an organization.

*Crowe v. Sobieski Serv., Inc*., No. #17-1310, 2018 BL 278670, at *5 (E.D. Pa. Aug. 3, 2018)

(internal quotations and citations omitted); se*e also Miketic v. Baron*, 450 Pa. Super. 91, 101-04,

---

[5] On June 30, 2023, in a private conversation with friends that Dr. Lett could not have anticipated
would become publicized, Dr. Lett says "what I can say is that it's a special b**** who studies
black trans people and then preys on them" and then goes on to say "Can I fight him?...Like
seriously, I wanna just pull up, shut up, and beat him up[.] Don't wanna talk just wanna fight[.]".
Ex. R at Lett 253. And on June 30, 2023 with staff of the Health Equity journal, when asked about
whether one of Dr. Duncan's manuscript should be pulled from review, Dr. Lett says "The
victimized person is not my friend but a fellow trans person. I don't really know the ethical stance
on this but [if] it's on trans people I can't stomach it being published…." Ex. T at Lett 149.

675 A.2d 324, 329-30 (1996) (Stating "[a] publication is conditionally privileged if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know."); *Hodges v. Lutwin*, 595 F. Supp. 3d 12, 20 (S.D.N.Y. 2022) ("New York law grants a qualified "common interest" privilege to "defamatory communications made by one person to another upon a subject in which both have an interest."). Plaintiff's Amended Complaint liberally violates Dr. Lett's common interest privilege—a fact powerfully underscored by the reality that these pleadings almost all note Dr. Lett's common interest privilege with the speakers on the basis that they were close friends, in a work or business relationship, or shared a common community interest, specifically as fellow members of the Trans community and/or Academia concerned about the accusations that Plaintiff abused a Trans man.[6] They are also members of a common organization: specifically Drs. Lett, Everhart, Restar, and Radix are all fellows of the Center for Applied Transgender Studies; and Drs. Lett, Green, and Duncan were all participants of IAPHS.[7] Thus, Dr. Lett is "not liable" for any of these statements and Plaintiff's attempts to use these messages to sustain an action for defamation per se or to prove actual malice must fail by law. *Id.*

> ### *v.    "Actual Malice" and "Spite" Are Separate and Unrelated Concepts*

Further, these seemingly harsh statements are best understood in context. *St. Surin*, 21 F.3d at 1317 ("[w]ords take on meaning in the company of other words."); *Mallory*, 260 F. Supp. 3d at

---

[6] *See* Plaintiff's Amended Complaint at ¶26; 42; 48; 56 (Quoting Dr. Lett's private message to dear friends and public health colleagues Drs. Avery Everhart and Arjee Restar); ¶35-6; 41; 55; 60 (Quoting Dr. Lett's private messages with "friend and fellow academic" Dr. Tiffany Green); ¶37; 43; 51 (quoting Dr. Lett's private messages with "another friend and fellow academic" Dr. Carl Streed"); ¶38(quoting Dr. Lett's private email to Dr. Samari, a member of Dr. Lett's "professional context"); ¶39 (Dr. Lett's private message to Mr. Sawyer Allen, a fellow member of the Trans community who Dr. Lett in good faith was seeking to support at all times believing Allen to have been harmed); ¶40 (discussing Dr. Lett's republication to public posts "within her social media network and/ or those withing her professional and personal network"); and ¶52; 57-9 (citing Dr. Lett's text with "a member of Professor Duncan's staff [and Trans person]…Krish Bhatt.).
[7] *See* https://www.appliedtransstudies.org/about/fellows.

459 ("Words…standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable….Courts must consider the full context of the [statement] to determine" whether there is defamatory meaning.").

A thorough understanding of context includes the social context that produced the statement itself. Any misguided attempt to contort Dr. Lett's seemingly harsh statements as evidence of actual malice should be exposed for what it is: a deceptive distraction. Read in their full context, these statements are clearly passionate expressions of Dr. Lett's justified anger in response to the genuine belief that Plaintiff, a "trusted colleague" known for work in the Transgender community, would "stud[y] [B]lack trans people and then prey[] on them." Ex. R at Lett 253. The very language of the above cited text, however strong, demonstrates that Defendant never wavered in the belief that Plaintiff committed harm against a vulnerable Trans person. Even if Dr. Lett's belief of Allen's public allegations generated feelings of "spite" or "ill will" leading Dr. Lett to express anger towards Dr. Duncan in private conversations amongst friends and colleagues, this would still not be enough to prove "actual malice." *St. Surin,* 21 F.3d at 1317-8 (3d Cir. 1994) ("Indeed, 'actual malice' in a defamation case and malice as 'an evil intent or a motive arising from spite or ill will' are separate and unrelated concepts."). Thus, where Plaintiff attempts to use these private statements to demonstrate actual malice or antipathy, those attempts fail by law.

In sum, Plaintiff cannot "point to any evidence in the record to demonstrate that [Dr. Lett] acted with knowledge or reckless disregard for the truth in publishing these statements from June 2023. The evidentiary record supports the opposite conclusion." *Mallory*, 260 F. Supp. 3d at 464. Dr. Lett's sworn declaration corroborated by text message conversations with Mx. Bhatt, Mx. Dolotina, and Allen and a deposition testimony all provide sound evidence that Dr. Lett was acting to support Allen. *See Id.* (holding that there was no defamation by relying on Defendant's sworn

18

declaration); *see also* Ex. C. at 48-49; Ex. F.; Ex. G; and Ex. AA pg. 199. Dr. Lett at all times believed Allen had been a victim of harm. Plaintiff cannot prove actual malice. Instead, Plaintiff "offers nothing more…than [his] own conclusory allegations, unsupported opinions, and suspicions that Defendant[] acted inappropriately when publishing the [tweets], all of which are insufficient to establish a genuine issue of material fact." *Id.* at 465. Dr. Duncan cannot meet his "burden of producing specific facts showing that a genuine issue of material fact exists and that a reasonable jury could rule in h[is] favor." *Id.* Thus, "[Plaintiff] has not sustained a claim of defamation against Defendant[]." *Id.* Summary judgment should be granted. *Id.*

## F.    DR. LETT'S JULY & AUGUST TWEETS ARE NON-ACTIONABLE

The categorization of a statement as a "fact or an opinion is a question of law" for the court. *Manco v. St. Joseph's Univ., No. 22-285, 2024 U.S. Dist. LEXIS 13181, at \*25 (E.D. Pa. Jan. 25, 2024) (*citing *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 168 (3d Cir. 2014)*)*. "Only statements of fact, rather than mere expressions of opinion, are actionable under…law." *Mallory*, 260 F. Supp. 3d at 459. "Pure opinions, which are based on disclosed facts, are 'absolutely privileged' and 'cannot be defamatory...no matter how derogatory they are.'" *Monge v. Univ. of Pa.*, No. 22-2942, 2023 U.S. Dist. LEXIS 104417, at \*5-6 (E.D. Pa. June 13, 2023) (citing *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020)); *see also Manco,* No. 22-285, 2024 U.S. Dist. LEXIS 13181, at \*24-25 (Opinions based on "disclosed facts are absolutely privileged, no matter how derogatory they are."); *see also Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990) ("[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection.").

Courts determine whether speech is protection opinion by examining whether 1) "the specific language in issue has a precise meaning which is readily understood"; 2) "the statements

are capable of being proved true or false"; and 3) "the full context of the communication in which

the statement appears or the broader social context and surrounding circumstances … signal [to]

readers…what is being read…is likely…opinion." *Coleman v. Grand*, 523 F. Supp. 3d 244,

262 (E.D.N.Y. 2021).

> The full text of Dr. Lett's Tweets from July and August 2023 read as follows:

> **JULY 18, 2023 TWEET:** There seems to be some confusion about where I stand
> on a recent incident involving a professor and a community member. To be
> unambiguous I donated to their fundraiser because I support them as a victim of
> harm. I deleted some tweets to reduce my exposure for a lawsuit but my support
> hadn't waned. I also note that the[re] are questions about the v[e]racity of claims.
> I'll share that being a perfect historian about dates of traumatic events is hard when
> in distress and that huge power imbalances facilitate doubt in victims. I'm 31 years
> old, I've seen and experienced my own harassment and trauma. I don't jump to
> conclusions nor change my convictions easily. We all have the capacity to be wrong
> but I haven't been convinced of that just yet.

> **AUGUST 10, 2023 TWEET:** A couple people have asked me about IAPHS so I'm
> going to address it again here. There was an alleged harm committed by a senior
> person involved. I say alleged, not because I doubt the victim, but for legal reasons,
> I avoid naming that person for similar reasons.

Ex. I at DD_36-7; 310. Dr. Lett's tweets, read in full, are clearly personal opinions. Although Dr.

Lett's language has a precise meaning, the context of the speech imply opinion. Dr. Lett frames

the statements with "there seems to be some confusion about where I stand" and "a couple of

people have asked me" which both imply personal opinion. *Coleman*, 523 F. Supp. 3d at 263

(Finding defendant's statements were framed as personal opinions where her email began "there's

been lots of talk about sexism in the music industry" thereby "creat[ing] a context in which [the

speech] is read as describing her subjective experience, allowing readers to decide for themselves

'what's acceptable.'"). Then, she explicitly states that "there are questions about the v[e]racity of

claims" saliently highlighting that there is an ongoing debate as to the truth of Allen's allegations.

Dr. Lett then employs language about "jump[ing] to conclusions", "chang[ing] convictions", the

"capacity to be wrong", being "convinced", and "alleged harm"—all of which are language connoting personal opinion. Further, Dr. Lett's statement that "being a perfect historian about dates of traumatic events is hard when in distress and that huge power imbalances facilitate doubt in victims….I've seen and experienced my own harassment and trauma" are disclosed facts upon which Dr. Lett bases her opinion. "This is a non-actionable opinion based on [] true facts from" research on the memory of trauma victims. *Mallory*, 260 F. Supp. 3d at 461, so Dr. Lett's July tweets "are not capable of defamatory meaning as a matter of law and cannot serve as the basis of any … defamation per se … claims." *Id.*

Even if Plaintiff highlights Dr. Lett's decision to describe Allen as "a victim of harm," this statement is meaningless outside of its greater context. *I.M. Wilson, Inc.,* 500 F. Supp. 3d at 422 ("The court must view the statement in context, bearing in mind the effect the [statement] is fairly calculated to produce, the impression if would engender, in the minds of the average persons among whom it is intended to circulate.") (citing *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001)) (internal quotation omitted). Dr. Lett's "opinion cannot be considered defamatory, no matter how [seemingly] unjustified and unreasonable this opinion may be or how derogatory it is" in Plaintiff's mind. *Veno v. Meredith*, 357 Pa. Super. 85, 94 (1986) (citing Restatement (Second) Torts §566 Comment c (1977)) (internal quotation omitted); *Anderson*, 2024 U.S. Dist. LEXIS 57413 at *16 ("[C]ertain types of communications, although undoubtedly offensive to the subject, do not rise to the level of defamation…expressions of opinion are not actionable."). If Dr. Lett's tweet about Allen as a victim of harm later proved erroneous, "[e]rroneous statement is inevitable in free debate, and . . . must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive."' *St. Surin*, 21 F.3d at 1316 (citing *Bose Corp. v. Consumers Union of United States,* Inc., 466 U.S. 485, 513 (1984); *New York Times Co.*, 376 U.S. at 271-72).

Further, the "over-all context" of Dr. Lett's commentary taking place online in a "public forum" supports a finding of nonactionable opinion statements. *Broughty v. Bouzy*, Civil Action No. 22-06458, 2024 U.S. Dist. LEXIS 73516, at *11 ("The court should look to the over-all context in which the assertions were made," including the forum, to determine how a reasonable reader would view them."); *Id.* at *10-11 ("[T]he 'over-all context' in which the alleged defamation occurred was Twitter—a public forum where a reasonable reader will expect to find many more opinions than facts.") (citing *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015)) ("New York courts have consistently protected statements made in online forums as statements of opinion rather than fact."); *see also Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (N.Y. App Div. 1st Dep't 2015) ("A tweet does not give the same impression of truth as a newspaper article.").

Finally, where Dr. Lett's July X-statement was made 1) made to clear up "confusion about where [she] st[ood]" regarding Allen's allegations and August X-statement was made in response to questions about her refusal to attend IAPHS, these statements simply reflected her truthful response on why she backed Allen and refused to attend IAPHS and cannot be defamatory. *See* 89 F. Supp. 2d 280 ("truth…unquestionably is an absolute defense to a defamation claim"). The Court should grant summary judgment that Dr. Lett's July and August tweets are non-actionable speech.

## G.   NO ACTUAL MALICE IN DR. LETT'S JULY & AUGUST TWEETS

Even if the court determines that Dr. Lett's July Tweets are actionable statements, Plaintiff would still need to demonstrate "actual malice by clear and convincing evidence" in these statements. *Mallory,* 260 F. Supp. 3d at 455. There is none. Plaintiff may attempt to cite the July email from Plaintiff's Attorney attaching Plaintiff's defamation lawsuit against Allen as evidence of malice or recklessness, but this Circuit has previously found similar evidence to be unpersuasive. *See Konowicz v. Carr*, 838 F. App'x 1, 5 (3d Cir. 2020) ("Republication of [an

allegedly defamatory] statement in light of [a] cease-and-desist letter did not…constitute actual malice."). Further, Dr. Lett's commentary amongst friends and colleagues demonstrate that Dr. Lett subjectively believed Allen's Public Allegations notwithstanding Dr. Duncan's Lawsuit. On July 14, 2023, in a private conversation with Krish Bhatt about Dr. Duncan's lawsuit against Allen, Dr. Lett states, "Yeah, I think he's relying on Sawyer not having resources. A tried and true tactic." Ex. P at 284. In a privileged conversation with Dr. Green on that same day, Dr. Lett says:

> And I'll be honest, just reading the complaint I would second guess stuff, if I didn't hear directly from his staff, who is partnered to someone who is friends with Sawyer, saw video of Dustin in the store interacting with Sawyer, and hadn't had colleagues independently reach out to me to say that they have been told that this sort of behavior is why he left NYU. EVERYBODY not Lying….

Ex. S at Lett 535. On July 15, 2023, in a conversation with Mx. Bhatt about the lawsuit against Allen, Dr. Lett states "well my intuition is that Sawyer is telling the truth…do you think they are?" That employee responds, "I think they are, but I don't think Columbia will take their side. [I] think Dustin is going to get away with this[.]" Ex. G at Lett 29-28. And even in an email exchange with Plaintiff's counsel David Lin on July 14, 2014, Dr. Lett mentions that a colleague "reached out with information about Dr. Duncan's …behaviors at NYU[] and the circumstances of his position change" as one of the reasons that Dr. Lett believed Allen's public allegations. Ex. K at pg. 2. From these correspondences, Dr. Lett clearly still subjectively believed Allen's public allegations, even in the face of Dr. Duncan's lawsuit against Allen. Over a month later, in another conversation with Dr. Green, Dr. Lett states "[Dr. Duncan] is and was one of the most convincing abusers I've met." Ex. S at Lett at Lett 535. Here, it is clear that Dr. Lett subjectively believed Allen's public allegations. Though Plaintiff attempts to argue that Dr. Lett's awareness of the lawsuit against Allen demonstrates reckless disregard for the truth, the context provided in these *private conversations* reveals the exact opposite, according to Dr. Lett's "subjective understanding."

*Konowicz*, 838 F. App'x at 4 (Courts "look to the speaker's subjective understanding of the truth or falsity of a statement when considering actual malice."). The July 2023 email from Plaintiff's Attorney regarding the lawsuit Plaintiff filed against Allen "did not invalidate [Dr. Lett's] reasonable understanding," that Allen had been a victim of harm. *Konowicz*, 838 F. App'x at 5 – 6. Dr. Lett, through personal experiences and research, has witnessed numerous instances of injustice that Black and Trans people have experienced at the hands of court systems. *See* Ex. C at ¶33; *see also* Ex. M at Lett 449 – 455, and Ex. AA pgs 192-4; 200-4. Dr. Lett has witnessed people with power use court systems to victimize vulnerable people. *See Id*. These experiences provide context of the utmost importance in evaluating the potential for defamatory meaning. Namely, this context informed Dr. Lett's understanding that Plaintiff's lawsuit against Allen did not undermine "the veracity of [Allen's] claims." Ex. I at DD_37; *St. Surin*, 21 F.3d at 1317. Thus, the email attaching the lawsuit "did not put [Dr. Lett] on notice that [any of her previous] statements [were] false," it was just notice that they "disagreed." *Id.* at 6. Further, Dr. Lett informed Plaintiff's Attorney in July 2023, months prior to the filing of this lawsuit, that the lawsuit appeared to be a "threat" and that rumors of Plaintiff's similar behavior at NYU influenced her belief in the plausibility of Allen's allegations. See Ex. K. at pgs. 2 and 4. Though it may be hard for Plaintiff to accept the reality that his lawsuit against Allen did not provide the vindication that he had hoped in Dr. Lett's mind, clear and convincing evidence of "actual malice" rests not on Plaintiff's hopes, but rather on Dr. Lett's subjective understanding. *See* Ex. AA pgs. 192 -4; 200-4.

From the record, this present lawsuit was clearly the first time that Dr. Lett received evidence strong enough to challenge the veracity of Allen's public allegations. In a conversation with Dr. Green on December 19, 2023 discussing this lawsuit, Dr. Lett states, "it does look like at least part of Sawyer[']s claims were fabricated." Ex. P at Lett 240. Here, Dr. Lett is referencing

the Meta subpoena. *See* Ex. C at ¶47. Although, the Meta subpoena mentioned eventually provided proof that Allen fabricated the alleged texts and Instagram messages that formed the basis of his accusation against Dr. Duncan, "this evidence was adduced well after the statement[s] at issue in this proceeding were made, it does not suggest [Dr. Lett] knew the falsity of [the July] statement [that Sawyer was a victim of harm] when [s]he republished it." *Konowicz*, 838 F. App'x at 6. Thus, Plaintiff cannot by clear-and-convincing evidence show Dr. Lett made any statement with a "high degree of awareness of [its] probable falsity" or actual malice. *Id.*

**H.    DR. LETT IS ENTITLED TO ATTORNEY'S FEES AND DAMAGES**

Dr. Lett requests summary judgment regarding attorney's fees. A party that prevails in an action under PA and NY's anti-SLAPP statutes is entitled to recover "[a]ttorney fees, court costs and expenses of litigation in the underlying action" and "punitive damages upon proof that the underlying action was commenced or continued for the sole purpose of harassing, intimidating, punishing or maliciously inhibiting protected public expression." *42 Pa. Stat. 8340.18*. As aforementioned, Dr. Lett's statements are categorized as "protected public expression." *Id.* Here, Dr. Lett is entitled to an award of attorney's fees and costs under PA and NY's anti-SLAPP laws.

## IV.    CONCLUSION

Plaintiff's Amended Complaint alleges numerous damages against Dr. Lett ECF 45, ¶74. as previously stated, Allen's allegations were shared by hundreds of people (many of whom alerted Columbia) and reached Public Health Academia prior to Dr. Lett's awareness of the matter. Here, Dr. Lett never contacted Columbia or any other authority to report Plaintiff nor was Dr. Lett involved any way with Plaintiff's criminal arrest, his emergency medical leave, or the disruption of Plaintiff's professional opportunities. Plaintiff's inability to prove Dr. Lett caused his alleged damages further underscores that the court should not hold Dr. Lett liable for defamation. Dr. Lett respectfully requests the Court grant her SJM and award her Attorneys' costs and fees.

Respectfully Submitted,

*/s/ Pearlette V. Toussant_____*
Pearlette V. Toussant, Esq.
Law Office of Pearlette V. Toussant, PLLC
2917 W. Harper Street
Philadelphia, PA, 19130
pearlettetoussant@gmail.com
Phone (215) 327 2900
Fax: (267) 836 1133

*Counsel for Defendant Dr. Elle Lett, MD, PhD.,*
*MA, Mbiostat*

DATED: December 18, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Dustin T. Duncan, ScD,

          Plaintiff,

     v.

Elle Lett, PhD.,

          Defendant.

Case No. 23-cv-04284 (KBH)

**DEFENDANT ELLE LETT'S FOURTH MOTION FOR SUMMARY JUDGMENT**

## <u>VERIFICATION</u>

I, Elle Lett, PhD, verifies that the statements contained in the foregoing are true and correct to the best of her knowledge, information and belief.  I declare under penalty of perjury that the foregoing is true and correct.

          /s/ Dr. Elle Lett
          Elle Lett, PhD.

DATED:    December 18, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Pearlette Toussant, Esq, hereby certify that the foregoing was electronically filed on this date with the Clerk of Court using the CM/ECF system, and I hereby certify that I have thereby electronically served this document upon all counsel of record who are registered with the Court's CM/ECF system.

December 13, 2025

Pearlette Toussant, Esq.
The Law Office of Pearlette V. Toussant, PLLC
2917 W. Harper Street
Philadelphia, PA, 19130
pearlettetoussant@gmail.com
Phone (215) 327 2900
Fax: (267) 836 1133

*Counsel for Defendant Dr. Elle Lett, MD, PhD., MA, Mbiostat*

## <u>CERTIFICATION OF MEET AND CONFER</u>

Dr. Lett's former pro hac vice Attorney, Omobolaji Oluwasola, Esquire, met and conferred with Plaintiff's Counsel Jane Jaang on Thursday, July 26, 2024 about the first special summary judgment Motion that I filed on June 28, 2024. Plaintiff's Counsel maintained that they do not agree with our reading of the law and intend to dispute the contents of this motion. Plaintiff's Counsel also stated that they did not feel that they could fully engage with a meet and confer without first taking the Defendant's deposition. After that meet and confer, Attorney Oluwasola also scheduled depositions for two key third-party witnesses (Krish Bhatt and Brett Dolotina) for Plaintiff and Plaintiff's Counsel to verify the truth of the contents below for themselves.

After taking depositions, Attorney Oluwasola met and conferred with Plaintiff's Counsel Jane Jaang and Shuyu Wang on Tuesday, August 27, 2024 about refiling a second motion for summary judgment. Plaintiff's Counsel maintained that they do not agree with our reading of the law and intend to dispute the contents of this motion and intend to oppose this motion. Since the parties were unable to reach a resolution, Defendant has chosen to refile this Motion for Summary Judgment.

On August 22, 2024, Dr. Lett agreed in good faith to a joint settlement conference with Plaintiff's Counsel with the stipulation that she still planned to file her summary judgment motion for the sake of attempting to bring this matter to an end as swiftly as possible. *See* Ex. Z. After agreeing to the settlement conference Plaintiff produced additional discovery that drastically impacted the parties ability to settle.

On October 21, 2024, Attorney Oluwasola held a third meet and confer with Plaintiff's Counsel Jane Jaang about this present motion for Summary Judgment. Plaintiff's Counsel maintained that they do not agree with my reading of the law and intend to oppose this motion.

In January 2024, this court waived the need for any further meet and confer.

Respectfully Submitted,

//s/ Pearlette Toussant_____
Pearlette Toussant, Esq.
The Law Office of Pearlette V. Toussant, PLLC
2917 W. Harper Street
Philadelphia, PA, 19130
pearlettetoussant@gmail.com
Phone (215) 327 2900
Fax: (267) 836 1133


*Counsel for Defendant Dr. Elle Lett, MD, PhD., MA, Mbiostat*